IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **RIVER NORTH DEVCO, LLC,** and **AMLI MANAGEMENT COMPANY,**<br><br>Plaintiffs,<br><br>v.<br><br>**NAILOR INDUSTRIES OF TEXAS, INC.; NEXUS VALVE, INC.;** and **CROWN ENERGY SERVICES, INC. d/b/a ABLE ENGINEERING SERVICES,**<br><br>Defendants. | Case No. 20 C 192<br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Defendant Nexus Valve, Inc.'s Motion to Dismiss (Dkt. No. 16) is granted and Defendant Nailor Industries of Texas, Inc.'s Motion to Dismiss (Dkt. No. 33) is denied. Accordingly, Counts Five through Eight of the Complaint (Dkt. No. 1) are dismissed.

### I. BACKGROUND

Plaintiffs River North Devo, LLC, and AMLI Management Company (collectively, the "Plaintiffs") are incorporated in Delaware and have a principal place of business in Illinois. (Compl. ¶¶ 1 & 2, Dkt. No. 1.) Plaintiffs own and manage the AMLI River North Apartment building in Chicago. (*Id.* ¶ 8.) First occupied in 2013, the building was designed with coil assemblies incorporated into

the HVAC systems used to provide heating and air conditioning to the building's apartments. (*Id.* ¶¶ 9 & 10.) Defendant Nailor Industries of Texas ("Nailor") designed, manufactured, and sold the coil assemblies. (*Id.* ¶¶ 11 & 12.) Nailor is incorporated and has its principal place of business in Texas. (*Id.* ¶ 3.) The coil assemblies include ball valves. (*Id.* ¶ 12.) Defendant Nexus Valve, Inc. ("Nexus") designed, manufactured, and sold the ball valves to Nailor. (*Id.* ¶ 13.) Nexus is incorporated and has its principal place of business in Indiana. (*Id.* ¶ 4.)

On August 8, 2018, the ball valve in one of the AMLI apartments began to leak. (*Id.* ¶ 14.) Personnel from Defendant Crown Energy Services, Inc., doing business as ABLE Engineering Services ("Able"), responded and attempted to fix the ball valve. (*Id.* ¶ 17.) During Able's repair attempts, the ball valve failed. (*Id.*) Water escaped from the HVAC unit and into the apartment. (*Id.* ¶ 18.) Plaintiffs' contract with Able included terms requiring Able to provide prompt emergency response services, and "to coordinate and develop a Building Operating Plan for AMLI River North, which included knowledge and procedures needed to shut down water and utility services in the event of an emergency." (*Id.* ¶¶ 19 & 20.) Despite the leak and failure of the ball valve, Able could not shut off the water flow, and the leak continued for several hours. (*Id.* ¶ 21.) This leak caused Plaintiffs $986,141.27

in expenses associated with property damages and improvements. (*Id.* ¶ 22.)

Plaintiffs bring a ten-count claim associated with this incident. Counts One through Four are against Nailor. These counts allege negligence, product liability, breach of implied warranty for a particular purpose, and breach of implied warranty of merchantability. Counts Five through Eight are against Nexus and allege negligence, product liability, breach of implied warranty for a particular purpose, and breach of implied warranty of merchantability. Counts Nine and Ten are against Able. Only Nexus and Nailor bring Motions to Dismiss. Nexus moves to dismiss for lack of personal jurisdiction and standing pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(1). Nailor moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs have not stated a claim because the "Seller's Exception" under Illinois law, 735 Ill. Comp. Stat. 5/2-621, mandates dismissal. The Court addresses both Motions as follows.

## II. LEGAL STANDARD

When a defendant challenges personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether personal jurisdiction exists, the Court can look beyond the

pleadings. *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008). Here, the parties conducted jurisdictional discovery, and the Court considers that material.

A 12(b)(6) motion to dismiss challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). To overcome a motion to dismiss under 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). When considering a 12(b)(6) motion to dismiss, the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### III. DISCUSSION

#### A. Nexus's Motion to Dismiss

Nexus moves to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) and for lack of standing pursuant to FED. R. CIV. P. 12(b)(1). Because the Court finds that

it lacks personal jurisdiction over Nexus, the Court does not address standing.

A "court's exercise of personal jurisdiction may be limited by the applicable state statute or the federal Constitution; the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, so here the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (internal citation omitted). A court may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quotations and citations omitted). There are two kinds of personal jurisdiction: general, or all-purpose, jurisdiction and specific, or case-linked, jurisdiction. Plaintiffs concede the Court lacks general jurisdiction over Nexus. Thus, the Court must determine whether it has specific jurisdiction over Nexus; if it does not, Nexus must be dismissed as a defendant.

A state may assert specific personal jurisdiction over an out-of-state defendant only "if the defendant has purposefully directed [its] activities at residents of the forum" and if "the litigation results from alleged injuries that arise out of or

relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted). "A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," and can legitimately exercise specific personal jurisdiction over a nonresident defendant who purposefully directed activities toward residents of the forum. *Id.* at 473.

For specific jurisdiction to attach even when there are purposefully directed activities, the litigation must arise from injuries related to those contacts. Those contacts "must be created by the defendant, not by the plaintiff or third parties . . ." *Murray v. Cirrus Design Corp.*, 339 F. Supp. 3d 783, 787 (N.D. Ill. 2018) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). And "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 400 (7th Cir. 2020).

Plaintiffs lean heavily on the deposition of Nexus's President and CEO, Sean Kalman. (*See generally* Kalman Dep., Pls.' Resp., Ex. A, Dkt. No. 50-1.) Kalman states that between 2015 and 2019, Nexus conducted about 2,000 separate sales in Illinois with sales revenue of about $5 million. (*Id.* at 43:18-25.) Further, Nexus spent about $1 million purchasing materials, supplies,

equipment, and components from Illinois customers. (*Id.* at 58:11–18.) In the last five years, Illinois was one of the five states in which Nexus generated the most revenue. (*Id.* at 73:21–25.)

The parties dispute whether these facts are enough to establish that Nexus purposefully directed its activities at Illinois residents. Nexus argues that this is a dubious proposition when it maintains no office and conducts only a fraction of its sales in Illinois. But even if Nexus purposefully directed its activities at Illinois, Plaintiffs still fail to establish specific jurisdiction. This is because the litigation must "arise out of or relate to those activities." *Burger King*, 471 U.S. at 472. Even assuming Nexus had minimum contacts in Illinois, the injury clearly did not arise from those activities. Plaintiffs have the burden, so they must demonstrate that their injury arose out of their Illinois sales. They have failed to do that. Nexus sold a ball valve to a Texas company, Nailor, which put it into a machine that Nailor, not Nexus, sold in Illinois. Plaintiffs have presented no evidence demonstrating that Nexus intended for Nailor's machine to end up in Illinois or even that Nexus knew that the machine would end up in Illinois. Having other, unrelated sales in Illinois is not enough. The Court has no personal jurisdiction over Nexus, and the Court dismisses Counts Five through Eight of the Complaint.

## B. Nailor's Motion to Dismiss

Defendant Nailor argues that Plaintiffs fail to state a claim because the Illinois "Seller's Exception" law, 735 Ill. Comp. Stat. 5/2-621, mandates dismissal. The Seller's Exception provides that in a product liability action maintained "against a defendant or defendants other than the manufacturer," the defendant can "file an affidavit certifying the correct identity of the manufacturer" of the product, after which the "court shall order the dismissal" of the "certifying defendant." *Id*. at §§ 2-621(a) & (b).

Nailor relies on Plaintiffs' Complaint, which identifies Nexus as the ball valve manufacturer, and an affidavit attached to its motion in which a Nailor employee identifies Nexus as the ball valve manufacturer. (*See* Sanchez Aff., Nailor Mot., Ex. 2, Dkt. No. 33-2.) Because Plaintiffs allege in their Complaint that Nexus manufactured the ball valves, Nailor asserts that Plaintiffs have pleaded themselves out of court. Nailor cites no cases interpreting the Seller's Exception, however, while Plaintiffs provide law showing that Nailor should not be dismissed under this statute.

The statute "is applicable to product liability actions and permits a nonmanufacturer defendant, *such as a retailer or other link in the distribution chain,* to be dismissed from the proceedings once the product manufacturer has been identified and sued." *Kellerman v. Crowe*, 518 N.E.2d 116, 112 (Ill. 1987)

(emphasis added). This suggests that the law applies to entities that merely sold a product, and Plaintiffs have cited cases holding as much. *See e.g., Lexington Ins. Co. v. Office Depot, Inc.*, 943 F. Supp. 2d 844, 848-50 (N.D. Ill. 2013) (dismissing retailer pursuant to Seller's Exception that "never opened or otherwise altered" the defective product); *Cassidy v. China Vitamins, LLC*, 120 N.E.3d 959, 962 (Ill. 2018) (discussing procedural history of case, where distributor was dismissed for failure to state a claim because it distributed and sold a product but did not manufacture it).

Nailor clearly does not fit into this exception: it is not a retailer, nor is it a link in the distributional chain. Indeed, although Plaintiffs claim the ball valve malfunctioned, that piece was part of the coil assemblies that Nailor manufactured. The Court also notes that even if it dismissed Nailor here, Plaintiffs could move to reinstate Nailor under the statute. The statute provides for reinstatement when the manufacturer (that is, Nexus) "cannot be subject to the jurisdiction of the courts of this State." 735 Ill. Comp. Stat. 5/2-621(b)(3). Nailor certified that Nexus is the ball valve manufacturer, but the Court found that it cannot exercise personal jurisdiction over Nexus. Thus, Nailor would promptly be reinstated even if it were dismissed.

Courts have applied the Seller's Exception to retailers and links in the distributional chain, and Nailor is not such a party. It is a manufacturer outside the statute's reach. Further, even if the Court did dismiss Nailor pursuant to the statute, Plaintiffs would be able to vacate the dismissal and reinstate Nailor because the statute so allows. Accordingly, the Court denies Defendant Nailor's Motion to Dismiss.

## IV. CONCLUSION

For the reasons stated herein, Defendant Nexus Valve, Inc.'s Motion to Dismiss (Dkt. No. 16) is granted. Defendant Nailor Industries of Texas, Inc.'s Motion to Dismiss (Dkt. No. 33) is denied. Accordingly, Counts Five through Eight of the Complaint (Dkt. No. 1) are dismissed.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 8/18/2020